## RILEY *vs.* OLIN.

1. On its substantial merits, this case is covered by *Hughes vs. Griswold.*
2. Voluntary services rendered by middle-men through whose agency a loan was procured, in looking after the payment of taxes on the mortgaged property and in collecting and remitting accrued interest on the loan, will not render the loan usurious, the services, though beneficial to the lender, being also beneficial to the middle-men, and being rendered in pursuance of a known custom of their business.
3. That one of the middle-men, in turning over the net proceeds of the loan to the borrower, reserved for his own benefit a small sum to cover exchange, the money actually lent being at a distance from the point of settlement, would not render the loan usurious.

July 31, 1889.

Interest and usury. Loans. Mortgages. Charge of court. Before Judge BOYNTON. Houston superior court. October term, 1888.

On April 6, 1887, Olin filed his petition to foreclose a mortgage for $1,000, given by Riley to J. H. Tallman to secure a promissory note for $1,000, dated March 2, 1885, and due five years after date, with interest on the principal sum at 8 per cent. per annum from date, due

and payable semi-annually, it being agreed that if default should be made in the payment of the semi-annual interest, the principal was to become due, and that the mortgage might be foreclosed and collected with interest and attorneys' fees, and interest on the interest in default at 8 per cent. per annum from the date of the default. The petitioner alleged that the semi-annual interest due on March 1, 1886, September 1, 1886, and March 1, 1887, was in default and unpaid, wherefore Riley had become bound to pay the principal of the note and the accrued interest thereon.

Defendant filed the following pleas: (1) Not indebted; (2) that he only borrowed and received the sum of $837.25, but gave his note for a thousand dollars, which included the $837.25, and $162.75 charged him as usury, the same being interest in excess of 8 per cent. per annum; (3) that plaintiff was not in fact a *bona fide* indorsee for value and without notice, but was the real payee and lender, got the benefit of the usury charged, and had full notice thereof; (4) that defendant only borrowed and received $837.25, which was borrowed at the time the note was made, and the lender charged him as usury $162.75 in excess of 8 per cent. interest on said money loaned him, which was incorporated in the note and mortgage, rendering them to that extent illegal and void; and that the same was equally illegal and void in the hands of plaintiff, if he took said note and mortgage as a *bona fide* indorsee.

Plaintiff, upon the trial, introduced the note and mortgage, with the interest notes and transfer thereof to him by Tallman, which transfer was without date. There was also introduced the application made by Riley for the loan, the substance of which is substantially stated hereafter. The parties agreed on the following statement of facts to be used as evidence:

" J. A. Riley, who resides in Perry, made application to A. S. Giles, who also resided in Perry and who advertised to make loans. on real estate, for a loan of money on his farm situated a mile and a half from Perry, upon the representation that the place was worth four thousand dollars. Giles was the agent, in the transaction, of R. F. Lawton, of Macon, Georgia, who was engaged in the business of making loans on real estate in Georgia. Riley agreeing to pay 16 per cent. on the amount of money he received, as commissions for negotiating the loan, Lawton sent the application to George W. Moore & Co., a partnership composed of Geo. W. Moore, Jas. H. Tallman and James B. Moore, of Hartford, Connecticut, with whom he, Lawton, had a contract to negotiate loans on real estate that he, Lawton, might send them, Lawton agreeing to pay Geo. W. Moore & Co. five per cent. upon the amounts of loans sent them by him, and which they negotiated for him. Geo. W. Moore & Co. found a party who agreed to take this loan, who is the plaintiff in the case. Olin paid to Moore & Co. $1,000, the amount of money specified in the note and mortgage, and left the money with Moore & Co., and Moore & Co. was to deliver to Olin the note and mortgage of Riley when the same was received by them. Moore & Co. had no special agreement with Olin to collect the interest for him. Geo. W. Moore & Co. are engaged in negotiating loans on real estate, and by the general custom of the business, loans negotiated by them are payable in Hartford, Connecticut, and all the interest is paid at their office. By the custom of the business, they pay to the lender for the borrower; this is done for both the convenience of the borrower and the lender ; if the interest is not paid, or the note when due is not paid, Lawton notifies Moore & Co., and Moore & Cc. notify owner of the paper. Moore & Co. are not under any obligations to any one for the performance of this service, but this is done by them for the benefit of Geo. W. Moore & Co's. business, and is done in the general course of their business. This general custom was well-known in Connecticut and pursued in this case. When Moore & Co. received the money as above in payment for the application, Moore & Co. wired Lawton, 'J. A. Riley application approved for $1,000.' Lawton then had mortgage and note executed, and completed abstract of title to the land, prepared and sent the papers to Geo. W. Moore & Co. and drew on Geo. W. Moore & Co. for $1,000, the amount of the note, which draft was paid by Geo. W. Moore & Co. Lawton only paid to J. A. Riley $837.50. Lawton charged Riley, in addition to the 16 per cent., $2.50 exchange, and 25 cents for a telegram sent him by Moore & Co. as to the approval of the loan. Lawton sent to A. S. Giles, to be paid to Riley, the money, before he received it from Geo. W. Moore & Co., and Geo. W. Moore & Co. received the 5 per cent. commissions for negotiating the loan. Neither Olin nor Moore & Co. knew anything about the amount of the commission charged by Lawton, but Moore & Co. knew that Lawton charged a commission ; nor did they know any-

thing about how Lawton paid the money,—whether it was done before or after the money was received by Lawton; nor did Olin or Moore & Co. know anything about the charge for exchange, or for the telegram, nor did either receive any part of this money. When Lawton sent them an application loan for negotiation and it was negotiated by them, Lawton was bound to pay them the amount of their commission, whether the borrower took the money or not. This was the only loan ever negotiated by Moore & Co. to Olin. Olin lives fifty or sixty miles from Hartford. Olin knew nothing about the amount of the commission charged. Jas. H. Tallman, to whom the note and mortgage were made, was one of the firm of Geo. W. Moore & Co.; but this was done by reason of the way in which the business was conducted when the application was sent to them and they negotiated it. The fact that it had been negotiated was telegraphed to Lawton to prevent mistakes which might occur in the transmission of the telegram, or to save the borrower trouble if the lender should fail or refuse to take the loan when papers were received by them, by agreement with Lawton and Moore & Co. All mortgages and notes were made in the name of Jas. H. Tallman. None of the money of Moore & Co. went into this loan. After the papers were received by Moore & Co., they were transferred by Tallman and delivered to Olin and were kept by him until delivered by him to ———— on for suit. The firm of Geo. W. Moore & Co. nor any other member had any business dealings with Olin before this transaction. The business relations between Lawton and Geo. W. Moore & Co. came about from the fact that Lawton went to Hartford and found Geo. W. Moore & Co. engaged in the business of negotiating loans, and sought to make a contract with them to find a market for such applications as he might send them for loans of money on real estate in Georgia. They agreed with Lawton that they would try to find customers for such applications as he would send them; when they found persons who were willing to lend the money on the applications, that he would pay them a commission for their services. Lawton had Riley's place examined by Giles, and had an abstract of title made; all this was necessary in order to get their money. Riley knew nothing of the business relations between Lawton and Moore & Co. or their method of negotiating said loans. Lawton and Geo. W. Moore & Co., by the custom of their business, looked after said lands covered by loans, and saw that the taxes were paid for the protection of the lender. For none of the services rendered by them for the plaintiff was the plaintiff charged any sum. The usual attorneys' fees for examination of titles and making abstract is one per cent. of the value of the property or the amount of loan. Lawton had other parties to whom he sent these applications for loans, and negotiated loans with other parties who had no connection whatever with Moore & Co. Lawton had all the papers prepared; he furnished applications and blank notes and mort-

gages, and had note mortgage filled out. The interest law of Connecticut is 6 per cent. per annum, and any [charge in excess is void; but this contract was made with reference to the interest allowed in Georgia."

The jury found for plaintiff a thousand dollars for his principal debt, with interest on the principal to the date of the verdict, interest upon interest in default, and attorney's fees and costs. Defendant moved for a new trial on the grounds that the verdict was contrary to law and evidence, that the court erred in refusing to give the charges requested by the defendant, and that he erred in the following portions of his charge :

(*a*) Riley filed his defence, in which he says that plaintiff ought not to recover the full amount sued for, because the contract on which the suit is based is tainted with usury, for that he only borrowed and received $837.25 and gave his note for a thousand dollars, including the sum of $837.25, which he borrowed and received, and the sum of $162.75 which was charged as usury ; that plaintiff was the payee and lender and got the benefit of the usury charged, which was in excess of the legal rate of 8 per cent.; and that he is not indebted as alleged and claimed by plaintiff.—The error alleged is, that this charge confined the issue to defendant's third plea, and withdrew from the consideration of the jury his second and fourth pleas with the evidence introduced thereon.

(*b*) If Olin was the actual lender and was not connected with Lawton and Geo. W. Moore & Co. or either of them in negotiating for a greater compensation for the loan of this money than 8 per cent., and did not receive or contract to receive any part of the compensation paid to Lawton or Moore & Co., then you would not be authorized to make any deduction from the amount specified in this note.—The errors alleged are,

that there was no evidence to authorize such charge; that it presented alone plaintiff's theory of the case, and entirely ignored defendant's theory that Lawton was the real lender and plaintiff the purchaser of the note from Lawton from his agents, Geo. W. Moore & Co.; and that it ignored the defence that if plaintiff was the real lender, by the custom of Moore & Co. and Lawton, they were bound to him as his agents, to look after the payment of taxes, for which he was to pay nothing but which were paid for by Riley, and to this extent plaintiff participated in the usury.

(c) If Riley did employ Lawton to procure a loan of money for him, and Lawton, as his agent, employed Geo. W. Moore & Co. to aid him in securing the loan from Olin, and the transfer was in good faith consummated as Riley's agents for the compensation agreed on, then the payment of commission agreed on and the legitimate expenses for transmitting the money from the place obtained to Riley, would not be usury.—The errors alleged are the same as in the preceding ground.

(d) If Lawton, directly or through Moore & Co., negotiated with Olin as Riley's agent, and contracted with Olin to make the loan, and Olin in compliance with said contract deposited the amount agreed on with Moore & Co. subject to Lawton's order to complete the loan, then Lawton had the right to draw for the money, and the contract is complete whenever the note and mortgage were sent forward pursuant to the agreement; and if Olin furnished the full amount agreed on as the loan and did not receive or contract to receive any other or greater compensation for his money than 8 per cent. named in the contract, then the contract would not be tainted with usury by reason of any compensation or commission paid by Riley to Lawton, or any expenses or charges made by Lawton for exchange or telegraph-

ing.—The errors alleged are, that this charge withdrew from the jury the consideration of defendant's theory that Lawton was the real lender and sold the note to plaintiff, and was an instruction that, under the evidence, they should find against the defendant upon that issue; that it was an expression of an opinion as to the form and effect that the jury should give to the weight of the testimony upon this issue; that it is not law; and that it ignored defendant's theory made by his pleas and evidence submitted, nor was the error corrected in any other part of the charge.

(e) If Lawton and Moore & Co. voluntarily rendered Olin services in collecting the interest and looking after the payment of taxes, this would not render the contract usurious.—The errors alleged as to this charge are, that the converse of the proposition was not given; that it ignored defendant's theory that, under the admitted custom of Lawton and Moore & Co., to perform these services entered by implication into the contract of the parties, and if plaintiff was thereby to receive the same and was not to pay for them, but they were in fact paid for by Riley for plaintiff's benefit, this made said contract usurious as to plaintiff; that it was an instruction to the jury to find against defendant's theory; and that there was no evidence to authorize it.

A further ground was, that the whole charge of the court was not a fair and impartial statement of the theories of the parties, but put plaintiff's case prominently before the jury and passed over slightingly, if it did not ignore, the issues and theories of the defence, in the following particulars: That Lawton was the real lender and the contract was usurious as to him, and this defence was available against plaintiff; that the contract was usurious as to Tallman, and this defence was available as against plaintiff; and that plaintiff contracted

for and received a greater rate than 8 per cent. for the loan, by obtaining services of Moore & Co. and Lawton to look after the payment of interest and taxes for his benefit, without paying anything therefor, but Riley had to pay for said services.

The motion was overruled, and defendant excepted.

HARDEMAN & DAVIS, for plaintiff in error.

J. H. HALL and CLIFFORD ANDERSON, *contra.*

BLECKLEY, Chief Justice.

1. In so far as the various requests made of the court to instruct the jury were legal and appropriate, their substance was covered by the general charge as given, a copy of which is in the record. On the merits of this case, there is no substantial difference between it and *Hughes vs. Griswold,* just decided, and no debatable difference whatever except as to a few minor details.

2. It appears that by the known custom of their business the intermediaries, Moore & Co. and Lawton, might be expected to render, and they did in fact render, service beneficial to the lender in looking after the payment of taxes on the mortgaged property, as well as in collecting and remitting accrued interest on the loan, but all this was without any express contract with any one, and seems to have been voluntary, and quite as much for their own benefit as for that of those with whom they had dealings. Moreover, in this as in the previous case, there was no evidence of the value of these services.

3. When Lawton, after being advised that a lender had been found, paid out of his own money to the borrower the net proceeds of the loan, or sent the same to the rural intermediary to be paid over, he deducted

therefrom a few dollars as the price of exchange. It did not appear that this deduction exceeded the current rate of exchange between Hartford, where the lender's money was, and Macon or Perry, where the borrower received the money from Lawton through the other intermediary. We think this deduction on account of exchange did not render the loan usurious as between the lender and the borrower. The jury have found, under a proper charge from the court, that the loan was not made by Lawton; and this being so, the borrower simply left in the hands of his own agent the amount deducted for exchange, if Lawton had no right to retain it. As in the previous case, there is no possible room for doubt that the lender parted with every cent of the loan, and that he derived no benefit directly or indirectly from any transaction had between the borrower and Lawton in their settlement concerning the proceeds of the loan.

Judgment affirmed.